UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 978-387-7150 | Case No. 20-mj-59-01-AJ<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Richard Sprankle, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 978-387-7150 ("Target Cell Phone") subscribed to "Laura Guizme" with a listed address of                                              ,           , whose service provider is Cricket Wireless and/or AT&T Mobility[1], a service provider headquartered at 1025 Lenox Park Blvd., Atlanta, Georgia. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B. As described more fully in Attachment B, this application requests data about the physical location of the Target Cell Phone including but not limited to E-911 Phase II data (or the specific latitude and longitude or other precise location information) for a period of thirty (30) days.

2. I am a Task Force Officer with the United States Drug Enforcement Administration ("DEA") and have been so employed since 2019. I am currently assigned to the

---

[1] Cricket Wireless is a subsidiary of AT&T that provides prepaid cellular telephone services on AT&T's network.

Manchester New Hampshire District Office. I am currently employed by the Nashua New Hampshire Police Department as a police officer since 2010. My duties and responsibilities as a DEA Task Force Officer include the investigation of federal crimes, including violations of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846.

3. During my employment with DEA, as well as my time with the Nashua New Hampshire Police Department, I have participated in numerous investigations relating to the distribution of controlled substances, including heroin, fentanyl, oxycodone, cocaine, and other substances in violation of the federal anti-drug laws, including Title 21, United States Code. Based upon my training and experience, I am familiar with narcotics traffickers' methods of operation, including the distribution, storage, and transportation of narcotics and the collection of money that constitutes the proceeds of narcotics trafficking activities. I am also familiar with the use of cellular telephone technology generally and as it is used to facilitate drug trafficking offenses.

4. I am familiar with the facts and circumstances of this investigation from my own personal participation and from oral and written reports given to me by other DEA Agents, Task Force Officers, and state and local police departments. Since this affidavit is being submitted for the limited purpose of establishing that probable cause exists to support the issuance of a search warrant, I have not included details about every aspect of the investigation. While this affidavit contains the material information I am aware of that is pertinent to the requested search warrant, it does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, I submit that there is probable cause to believe, and I do believe, that violations of Title 21, United States Code, Sections 841(a)(1) and 846 (conspiracy to distribute controlled substances) have been committed, are being

committed, and will be committed by the person using Target Cell Phone, and others known and unknown. I submit that there is also probable cause to believe, and I do believe, that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

6.   The DEA is conducting a long-term investigation of a drug trafficking organization operating primarily from Lawrence, Massachusetts, that receives orders for fentanyl, cocaine, and cocaine base via telephone call and text message.  The leaders of the organization use the nicknames, "Ronnie" and "Janet."  In January 2020, the DEA obtained telephone number                 , as the number used by the organization to facilitate drug transactions.

7.   On February 11, 2020, by using the 3104 telephone number identified in the prior paragraph, the DEA arranged a purchase of fentanyl in exchange for United States Currency from the organization. On February 11, at the request of the DEA, a cooperating source under the supervision of an undercover law enforcement officer, sent a text message to             to order "5 sticks" in exchange for $500 in United States currency.  A "stick" is a common term to describe a 10 gram unit of fentanyl and is a term that has been used in other transactions involving this drug trafficking organization.  The operator of the 3104 telephone said that the drugs would be available at 6:30 p.m.  The source asked for an address and was advised to go to                    in                    .  In response, law enforcement set up surveillance in the area of the proposed meet location.  The operator of 3104 then made multiple requests to move the deal location until settling on                  in          ,

. Law enforcement surveillance set up at this location as well. Officers observed a silver Volvo sedan, Massachusetts Registration          circle the area several times. After a short wait on Neismith Street, a male approach the source's vehicle and entered the backseat. The source provided the male with the United States currency and in turn the male handed the source the suspected fentanyl. The undercover officer was also present in the car and observed the transaction. Following the transaction, the male left the source's car and began to walk away toward the silver Volvo sedan that had parked down the street. After the source left the area, officers made contact with the male, identified as                          .          had on his person the money that the source had just provided to buy the drugs.

8. On February 13, 2020, two days after the transaction described above, a DEA undercover officer who had previously made purchases from the organization, received a text messages from the Target Cell phone, stating, "Hey its Janet save my number." As mentioned above, "Janet" is the name used by one of the leaders of the drug organization from which the source purchased the suspected fentanyl described in paragraph 7. Throughout the investigation, sending texts such as the one just described is the method by which the organization changes its contact number.

9. I therefore believe that the Target Cell Phone is presently being used to conduct communications in furtherance of a drug distribution conspiracy. Thus, tracking the Target Cell Phone will assist in surveillance and likely lead law enforcement to locations and persons involved in drug trafficking.

10. No tangible property, or wire or electronic communications, shall be seized pursuant to the warrant. To the extent the requested real-time tracking (GPS, cell site, or other) information may constitute stored electronic information under 18 U.S.C. §§ 2701-2711, it is

believed 18 U.S.C. § 2703(c)(1)(A) expressly authorizes the provision (by the service provider) and retention ("seizure") by agents of such information. To the extent it may not, there is reasonable necessity for the "seizure" of such information. 18 U.S.C. § 3103a(b)(2). Not allowing agents to retain the information so they may identify the user of the target phone and his/her location would defeat the only purpose of the warrant and render the warrant useless. No stored wire or electronic information shall otherwise be seized pursuant to the warrant.

11.     In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

12.     Based on my training and experience, I know that AT&T can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine

the location of the Target Cell Phone on AT&T's networks or with such other reference points as may be reasonably available.

13. Based on my training and experience, I know that AT&T can collect cell-site data about the Target Cell Phone.

## AUTHORIZATION REQUEST

14. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

15. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 90 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

16. I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T. I also request that the Court direct AT&T to furnish the government all information,

facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's networks or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

    I declare that the foregoing is true and correct.

/s/ Richard Sprankle  
Richard Sprankle  
Task Force Officer  
Drug Enforcement Administration

SUBSCRIBED and SWORN to before me  
this 21st day of February, 2020 in Concord, New Hampshire.

/s/ Andrea K. Johnstone  
HON. ANDREA K. JOHNSTONE  
United States Magistrate Judge

# ATTACHMENT A

## Property to Be Searched

1. The wireless telephone assigned call number 603-387-7150 ("Target Cell Phone") subscribed to "Laure Guizme" with a listed address of                                              ,                     , whose service provider is Cricket Wireless and/or AT&T Mobility, a service provider headquartered at 1025 Lenox Park Blvd., Atlanta, Georgia.

2. Information about the location of the Target Cell Phone that is within the possession, custody, or control of AT&T including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A. This warrant does not authorize the collection of any content of communications.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).